UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA             :
                                     :
            Plaintiff,               :
                                     :     Civil Action No. _____
        v.                           :
                                     :
AXIALL CORPORATION, CITGO PETROLEUM  :
CORPORATION, BRIDGESTONE AMERICAS    :
TIRE OPERATIONS, LLC, BRIDGESTONE    :
AMERICAS. INC., FIRESTONE POLYMERS,  :
LLC, OCCIDENTAL CHEMICAL             :
CORPORATION, OXY USA INC.,           :
PPG INDUSTRIES, INC., and WESTLAKE   :
POLYMERS LLC                         :
                                     :
            Defendants.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**COMPLAINT**

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, on behalf of the United States Environmental Protection Agency ("EPA") files this Complaint against Axiall Corporation, Bridgestone Americas Tire Operations, LLC, Bridgestone Americas, Inc., CITGO Petroleum Corporation, Firestone Polymers, LLC, OXY USA Inc., Occidental Chemical Corporation, PPG Industries, Inc., and Westlake Polymers LLC (collectively "Defendants") seeking reimbursement of response costs incurred or to be incurred for response actions taken at or in connection with the release or threatened release of hazardous substances at the Calcasieu Estuary Site in Lake Charles, Calcasieu Parish, Louisiana ("the Site").

## INTRODUCTION

This is a civil action pursuant to Sections 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), for recovery of response costs incurred or to be incurred for response actions taken at or in connection with the release or threatened release of hazardous substances at the Site. Defendants, or their legal predecessors in interest, own and operate, or previously owned or operated at the time of disposal, refining and petrochemical manufacturing plants near the Site at and from which hazardous substances were disposed and released to the Site.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 9607. This Court also has personal jurisdiction over the Defendants.

2. Venue lies in the Western District of Louisiana under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391, because these claims arise in connection with a release and threat of release of hazardous substances which has occurred in this judicial district from facilities within this judicial district.

## DEFENDANTS

3. Axiall Corporation ("Axiall") is a Delaware corporation doing business in this district at the Lake Charles South Manufacturing Complex in Lake Charles, Louisiana located in the vicinity of 1300 PPG Drive, Westlake, Louisiana 70669.

4. Bridgestone Americas, Inc. is a Nevada corporation and a successor to the parent company of Firestone Polymers, LLC which has conducted business operations in this district at 1801 Hwy 108 East, Sulphur, Louisiana 70665.

5. Bridgestone Americas Tire Operations, LLC is a Delaware limited liability company and has at relevant times conducted business operations in this district at 1801 Hwy 108 East, Sulphur, Louisiana 70665.

6. CITGO Petroleum Corporation ("CITGO") is a Delaware corporation doing business in this district at the Lake Charles Manufacturing Complex located in the vicinity of 4401 Highway 108 S. in Sulphur, Louisiana.

7. Firestone Polymers, LLC is a Delaware limited liability company doing business in this district at 1801 Hwy 108 East, Sulphur, Louisiana 70665.

8. Occidental Chemical Corporation ("Occidental") is a Delaware corporation doing business in this district in the vicinity of Highway 108 S. in Sulphur, Louisiana.

9. OXY USA, Inc. is a Delaware corporation doing business in this district and succeeded to certain liabilities of Cities Service Corporation and Cities Service Oil and Gas Corporation related to former operations in the vicinity of 4401 Highway 108 S. in Sulphur, Louisiana.

10. PPG Industries, Inc. ("PPG") is a Pennsylvania corporation that does business in this district in the vicinity of Pete Manea Road in Westlake, Louisiana, and in the vicinity of Columbia Southern Road and PPG Drive, Lake Charles, Louisiana.

11. Westlake Polymers LLC ("Westlake") is a Delaware limited liability company doing business in this district in the vicinity of 3525 S. Cities Services Highway, Sulphur, Louisiana 70665.

12. Each of the Defendants is a "person" within the meaning of Sections 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## STATUTORY BACKGROUND

13. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part that:

> (1) the owner and operator of . . . a facility, [and] (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, . . . (4) . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for – . . . (A) all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the national contingency plan; . . . [and] (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

14. The NCP provides the "procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants . . . ." 42 U.S.C. § 9605(a). The NCP is codified at 40 C.F.R. Part 300.

15. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), also provides that "[t]he amounts recoverable in an action under this Section shall include interest on the amounts recoverable under subparagraphs (A) through (D)."

16. Liability to the United States under Section 107(a) of CERCLA, 42 U.S.C. § 9607, for all costs of response actions incurred and to be incurred by the United States related to the Site, is strict and joint and several.

17. Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2), entitles the United States to obtain a declaratory judgment on liability for future response costs: "[T]he court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

## BACKGROUND OF EPA AND LDEQ INVESTIGATIONS

18. Pursuant to authority under Section 104(a) of CERCLA, 42 U.S.C. § 9604(a), and state law, the United States Environmental Protection Agency ("EPA") and the Louisiana Department of Environmental Quality ("LDEQ") initiated investigations of the Calcasieu Estuary Site for environmental contamination caused by industrial activities along the Estuary and its tributaries.

19. On March 31, 1999, pursuant to 40 C.F.R. § 300.430, EPA commenced a remedial investigation of the Site. The Site is defined by the areal extent of contamination within the areas of the Estuary encompassing Bayou Verdine, Bayou d'Inde, Coon Island Loop, Clooney Island Loop, Prien Lake, Lake Charles, and the Calcasieu River from the saltwater barrier (north of Lake Charles) to Moss Lake. The remedial investigation included the surface water, tributaries, biota, sediment, soils, adjoining shoreline and banks, riparian habitats, and related wetlands in these areas. *Calcasieu Estuary Remedial Investigation, Lake Charles Louisiana*, EPA 2003 ("RI"). The RI identified four Areas of Concern within the Calcasieu Estuary, including the Bayou Verdine Area of Concern ("BVAOC") and the Bayou d'Inde Area of Concern ("BDAOC"). *Id*. at Section 2.6.

20. The BVAOC encompasses a portion of the Bayou Verdine channel extending upstream from its confluence with the Calcasieu River-Coon Island Loop , together with its tributaries and each of their associated surface water, sediments, soil, biota, adjoining shoreline and banks, riparian habitat and wetlands, and includes the ponds adjacent to New Trousdale Road.

21. The BDAOC encompasses the upper, middle, and lower portions of Bayou d'Inde, including its fringe marshes and Lockport Marsh, as well as the PPG Canal, and the Coon Island Loop. Bayou d'Inde is located in the northern portion of the Calcasieu Estuary, west of the City

of Lake Charles, Louisiana. Bayou d'Inde's headwaters originate in the western part of Sulphur, Louisiana and flow primarily east-southeast through heavy commercial and industrialized areas before emptying into the ship channel southwest of Coon Island. Bayou d'Inde is approximately 15 km long and is the major tributary to the Calcasieu River and Coon Island Loop. Bayou d'Inde flows through the low-lying marsh area called Lockport Marsh, located at the confluence of Bayou d'Inde and the Calcasieu River Ship Channel.

22.     In accordance with 40 C.F.R. § 300.5, EPA entered into a Superfund Memorandum of Agreement ("MOA") with LDEQ in May 2003 under which EPA became Lead Agency for the BVAOC and LDEQ became Lead Agency for the BDAOC. The MOA provides that for each Area of Concern there would be a Lead Agency and Support Agency.

23.     Pursuant to a negotiated Administrative Order on Consent ("AOC") between EPA, ConocoPhillips Company and Sasol North America Inc., dated February 15, 2002, these companies conducted an Engineering Evaluation and Cost Analysis ("EE/CA") for the BVAOC.

24.     Collectively, the RI and the EE/CA found "hazardous substances," within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), in the sediments, surface waters and biota of the BVAOC, including in one or more media, arsenic, polynuclear-aromatic hydrocarbon ("PAH") compounds, zinc, copper, mercury, chromium, 1,1,2-trichloroethane, 1,2-dichloroethane ("EDC") and vinyl chloride.

25.     Pursuant to a subsequently negotiated AOC for Removal Action dated October 22, 2002 (the "West Ditch AOC"), ConocoPhillips Company and Sasol North America Inc. performed a

time-critical removal action at the West Ditch Area of the BVAOC to remove the sediment containing the elevated EDC concentrations.

26. EPA also determined the need to perform a non-time critical removal action in the Main Channel of the BVAOC as set forth in an Action Memorandum executed on August 6, 2003. The non-time critical removal action included, *inter alia,* removal of contaminated sediments in discrete areas of the BVAOC, upland on-site containment of the removed sediments, and monitored natural recovery. ConocoPhillips Company and Sasol North America performed this action pursuant to a Consent Decree entered on April 20, 2011 in *United States and State of Louisiana v. ConocoPhillips Company and Sasol North America Inc.*, Civ. No. 10-1558 (W.D. La.). On September 10, 2015, EPA issued a Certificate of Construction Completion for the non-time critical removal action.

27. The RI also identified the presence of hazardous substances in the BDAOC, including, among other substances: copper, lead, mercury, zinc, nickel, organochlorine pesticides, semi-volatile organic contaminants, and volatile organic contaminants in surface waters; chromium, zinc, mercury PAH, polychlorinated biphenyls ("PCBs"), polychlorinated dibenzo-p-dioxins/polychlorinated dibenzofurans ("PCDDs/PCDFs"), bis (2-ethylhexyl) phthalate ("BEHP"), Hexachlorobutadiene ("HCBD"), Hexachlorobenzene ("HCB") and organochlorine pesticides in sediments; and metals, phenols, PAHs, PCBs, BEHP and dioxin/furans in biota.

28. Hazardous substances were also found in other areas of the Calcasieu Estuary outside of the BDAOC and BVAOC, including the Calcasieu River.

29. Pursuant to a Cooperative Agreement between LDEQ, as Lead Agency for the BDAOC, and defendants PPG, CITGO, Occidental and Westlake Polymers LP, these defendants

performed a Corrective Action Study for the BDAOC. The Corrective Action Study Report was finalized on August 27, 2009, and it documented the development and evaluation of remedial action alternatives for the BDAOC.

30. On March 26, 2011, LDEQ issued its Decision Document for the Final Remedy of the Bayou d'Inde Site, Calcasieu Parish. The selected response action required actions in four areas of Bayou d'Inde, consisting of in situ capping of sediments in certain areas of the upper main channel, removal of sediments in the main channel between the PPG Canal and the mouth of Bayou d'Inde, capping of sediments in certain fringe marshes, and capping of sediments in a portion of Lockport Marsh.

31. Pursuant to a Cooperative Agreement signed in 2013 by LDEQ and defendants PPG, Axiall, CITGO, Occidental, and OXY USA, Inc., these defendants agreed to undertake LDEQ's selected response action for Bayou d'Inde ("2013 Cooperative Agreement") and have implemented this work.

32. Pursuant to the 2003 MOA, EPA is a Support Agency for LDEQ's remedy selection and implementation of the response action for the BDAOC.

## GENERAL ALLEGATIONS

33. Bridgestone Americas Tire Operations, LLC is the corporate successor in interest by merger to Bridgestone/Firestone, Inc. f/k/a The Firestone Tire & Rubber Company. The Firestone Tire & Rubber Company conducted certain synthetic rubber and/or latex manufacturing operations at the plant located at 1801 Hwy 108 East, Sulphur, Louisiana 70665 ("Bridgestone/Firestone Plant") from the time the plant commenced operations in approximately 1943 until on or about November 30, 2001. On August 1, 1989, The Firestone Tire & Rubber

Company's name was changed to Bridgestone/Firestone, Inc. As part of a November 2001 reorganization and restructuring, Bridgestone/Firestone, Inc. was dissolved and merged into an entity later renamed Bridgestone Americas Tire Operations, LLC.

34.     Bridgestone Americas Tire Operations, LLC, or its predecessors in interest, discharged wastewaters, including the hazardous substances styrene and chromium, from the Bridgestone/Firestone Plant through Outfall 001 into Bayou d'Inde. Prior to the 1970s, wastewater was discharged through stormwater Outfalls 003 and 004 to Bayou d'Inde. Also, Bridgestone Americas Tire Operations, LLC, or its predecessors in interest, used transformers containing PCBs, a hazardous substance, at the Bridgestone/Firestone Plant. In 2016, LDEQ conducted sampling of the Bridgestone/Firestone Plant discharge ditch to Outfall 001 and just beyond for the presence of PCBs. LDEQ detected PCBs in multiple samples and concluded that PCBs disposed at the Bridgestone/Firestone Plant have been released to Bayou d'Inde.

35.     On November 30, 2001, the Bridgestone/Firestone Plant was acquired by Firestone Polymers, LLC. From November 30, 2001 until the present, Firestone Polymers, LLC has owned and operated the Bridgestone/Firestone Plant for the manufacture of synthetic rubber. Subject to a reasonable opportunity for further investigation and discovery, after Firestone Polymers, LLC acquired the Bridgestone/Firestone Plant hazardous substances disposed at the Plant were released to the BDAOC. Additionally, subject to a reasonable opportunity for further investigation and discovery, Firestone Polymers, LLC may be liable for releases of hazardous substances to the BDAOC as a successor in interest to former owners and operators of the Bridgestone/Firestone Plant.

36. Since at least 1983, CITGO has owned and/or operated a crude oil refinery and a lubricants plant at the Lake Charles Manufacturing Complex located at or in the vicinity of 4401 Highway 108 S, Sulphur, Louisiana (CITGO Complex). The CITGO Complex is bordered to the East by the Calcasieu River and to the north by Bayou d'Inde. The oil refinery and lubricants plant were constructed in the 1940s and then operated by a predecessor in interest to CITGO known as Cities Services Company. In March 1983, Cities Services Company transferred ownership of the Lake Charles oil refinery to CITGO. Also in March 1983, Cities Services Company transferred its partial ownership interest in Cit-Con Corporation, which owned the lubricants plant, to CITGO. CITGO acquired the remaining interest in the lubricants plant in 2002. CITGO owns and operates the oil refinery and the lubricants plant. It has also operated a propylene fractionation unit at the CITGO Complex.

37. The lubricants plant and the propylene fractionation unit have discharged waste streams to Bayou d'Inde. RI at 7-7. During CITGO's operations, and operations of its predecessors in interest, hazardous substances, including, *inter alia,* zinc, phenols and toluene, were disposed and released to the BDAOC through, among other events, unpermitted leaks and spills during operations, and discharges through one or more permitted outfalls (Outfall 001 and 002) into Bayou d'Inde in violation of permit limits under Louisiana Pollution Discharge Elimination ("LPDES") permit LA0005941, as amended. Additionally, CITGO and its predecessors have operated numerous unlined surface impoundments, including hazardous waste management units, at the lubricants plant to store or treat process wastes. Subject to a reasonable opportunity for further investigation and discovery, these impoundments may also be a source of hazardous substances released to the BDAOC.

38. CITGO's refinery operations have discharged hazardous substances directly or indirectly to the Calcasieu Estuary via spills, discharges through Outfalls 003, 004 and 008 to the Calcasieu River Ship Channel in violation of LPDES permit limits (e.g., naphthalene, slop oil, ethanol, zinc, nitrogen ammonia, chlorine, phenolics), and hazardous substances in groundwater from CITGO's unlined impoundments.

39. During the relevant period, Occidental has owned and operated petrochemical facilities at the Lake Charles Manufacturing Complex located in the vicinity of 4300 Highway 108 S. in Sulphur, Louisiana. In December 1982, a subsidiary of Occidental Petroleum Corporation ("OPC") merged with Cities Services Company, which owned a refinery and petrochemical business at the Lake Charles Manufacturing Complex. In March 1983, Cities Services Company transferred its Lake Charles refinery and its marketing and transportation assets to a subsidiary that became CITGO, but it retained the petrochemical business (consisting of two ethylene/propylene plants and two polyethylene plants). Also in 1983, Cities Services Company transferred certain assets, including the two ethylene/propylene plants and two polyethylene plants, to Cities Service Oil and Gas Corporation ("CSOGC").

40. In 1985, Occidental acquired CSOGC's remaining petrochemical business, consisting of two ethylene/propylene plants and one polyethylene plant. In 1987, Occidental sold the polyethylene plant to Westlake Polymers Corporation, but it retained the two ethylene/propylene plants.

41. Beginning in the mid-1980s through the present, Occidental leased one ethylene/propylene (olefins) plant (EP-1) to CITGO which operated it as part of the propylene fractionation unit. Occidental operated the second ethylene/propylene (olefins) plant (EP-2) from

the EP-2 restart in 1986 until May 1998. Occidental held LPDES permit LA0069850 for the ethylene/propylene plant at least through this period.

42. Equistar Chemicals, LP, a limited partnership joint venture between Occidental, Millennium Chemical and Lyondell Chemical Co., assumed operation of the EP-2 olefins plant in May 1998 under a lease from Occidental and operated the EP-2 plant through at least 2001 when the EP-2 plant was idled. Following Equistar's bankruptcy in 2009, the bankruptcy court determined that Occidental remained the owner of the EP-2 olefins plant. Thereafter, Glenn Springs Holdings Inc., a subsidiary of OPC, managed the idled EP-2 plant on behalf of Occidental until the sale of the EP-2 plant in 2015. Occidental also sold the EP-1 plant property in 2015.

43. During the relevant period, Occidental owned and operated the EP-2 olefins plant and owned the EP-1 olefins plant leased to and operated by CITGO. During operations at its EP-2 olefins plant, hazardous substances, including, among other substances, benzene, sulfuric acid, napthalene, and mercury were disposed there and released to the BDAOC through, among other events, leaks and spills at the plant, or discharges through permitted Outfalls into Bayou d'Inde in violation of permit limits under LPDES permit LA0069850, as amended. Additionally, unlined surface impoundments at the Occidental EP-2 plant contain or contained hazardous substances. Groundwater beneath East and West impoundments is contaminated with xylene, toluene and benzene. The RI Report states that the East and West impoundments once contained waste PCB sludge and are an apparent source of PCBs in Reaches 2 and 3 of Bayou d'Inde. *See* RI Report at 7-9 and 7-71.

44. Subject to a reasonable opportunity for further investigation and discovery, Occidental may also be liable for the acts of its predecessor in interest, Cities Services Company, for disposals and releases of hazardous substances at the petrochemical facilities during the years prior to the acquisition.

45. In April 1988, CSOGC changed its name to OXY USA Inc. Subject to a reasonable opportunity for further investigation and discovery, OXY USA, Inc., succeeded to certain liabilities of CSOGC and its predecessors in interest related to the disposal and release to the BDAOC of hazardous substances during earlier petrochemical operations at the Lake Charles Manufacturing Complex.

46. During the relevant period, PPG has owned and operated petrochemical manufacturing plants located at the Lake Charles South Manufacturing Complex in the vicinity of Pete Manea Road in Westlake, Louisiana, and in the vicinity of Columbia Southern Road and PPG Drive, Lake Charles, Louisiana on the West Bank of the Calcasieu River. Southern Alkali Corporation, a subsidiary of Pittsburgh Plate and Glass, acquired the plants in or about 1947 in order to manufacture chlorine and caustic soda. PPG acquired full ownership of the plants in about 1968 and manufactured a variety of chlorinated hydrocarbons and precipitated silica there.

47. PPG operated three process areas in the vicinity of Bayou d'Inde and Lockport Marsh. The chlor-alkali plant, the derivatives plant, and the chloralkali/silicas area. PPG was authorized through LPDES permit LA0000761 to discharge process wastewater from several outfalls into Bayou d'Inde, the Calcasieu River and Bayou Verdine. Outfall 001 discharges treated process wastewater from its three manufacturing plants, incinerator scrubbers and the waste treatment unit into the PPG Canal and Bayou d'Inde. During these operations, hazardous substances,

including, inter alia, mercury, sodium hydroxide, copper, bromoform, hexachlorobenzene, and hexachlorobutadiene, were disposed and released into the BDAOC through, among other events, spills and discharges in excess of permitted limits then in effect under LPDES permit LA0000761, as amended. Additionally, the RI Report at 7-71 notes that PCBs were detected in Bayou d'Inde near the mouth of the PPG Canal, and that "PCBs are handled and disposed of through incineration at PPG and localized air deposition is likely." PPG also discharges hazardous substances to the Calcasieu River upstream of the confluence of the Calcasieu River and Bayou d'Inde.

48. PPG has operated numerous surface impoundments to treat, store or dispose of process wastes. There have been documented releases to surface waters from at least three of the surface impoundments – the PPG Canal, the South Terminal Landfill and the North Dock. Sediments in the units and groundwater beneath these and other units are contaminated with hazardous substances.

49. Axiall Corporation acquired and assumed operations of PPG's chlor-alkali plant and derivatives plant in 2013 either directly or through its subsidiary Eagle 2 US, LLC. In the transaction between Axiall and PPG, Axiall assumed most of PPG's obligations and liabilities arising from the chlor-alkali and derivatives business. The assumed liabilities include liability for response actions and response costs relating to PPG's chlor-alkali and derivatives business operations. Accordingly, Axiall succeeded to the liabilities of PPG related to EPA's response actions at the Site.

50. Since 1986, Westlake, or its legal predecessors in interest Westlake Polymers Corporation and Westlake Polymers LP, has owned and operated polyethylene plants located in

the vicinity of 3525 S. Cities Services Highway, Sulphur, Louisiana. Westlake Polymers Corporation acquired the polyethyene plants from OPC in 1986 and then merged into Westlake Polymers LP in December 2000. Westlake Polymers LP owned and operated polyethylene plants from at least December 2000 until it was renamed Westlake Polymers LLC in December 2007.

51. Westlake, or its predecessors in interest, discharged wastes into the Calcasieu River via Outfall 001 (process wastewater and stormwater) and Outfalls 002, 003 and 004 (untreated stormwater from process and non-process areas). RI Report at Section 10-7. Additionally, the RI found detections of BEHP to be associated with CITGO and Westlake outfalls. *Id*. at 10-56 to 57. These discharges included the hazardous substances naphthalene, phenanthrene, acenaphthene, benzene, toluene, ethylene dichloride, lead, and bis(2-ethyhexl)phthalate.

## CLAIM FOR RELIEF

(LIABILITY FOR RESPONSE COSTS UNDER CERCLA)

52. Paragraphs 1- 51 are realleged and incorporated herein by reference.

53. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

54. The Bridgestone/Firestone Plant constitutes a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

55. The CITGO Complex, including the lubricant plant, the refinery, and the propylene fractionation unit at the Lake Charles Manufacturing Complex, constitutes a "facility" or facilities within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

56. The ethylene and propylene plants currently or formerly owned and operated by Occidental, or its predecessors in interest, at the Lake Charles Manufacturing Complex each constitute a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

57. The petrochemical plants currently or formerly owned and operated by OXY USA, or its predecessors in interest, Cities Service Company and CSOGC, at the Lake Charles Complex, each constitute a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

58. The chlor-alkali plant, derivatives plant, and chloralkali/silicas area currently or formerly owned and operated by PPG each constitute a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

59. The chlor-alkali plant and derivatives plant acquired by Axiall in 2013 each constitute a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

60. The polyethylene plants currently or formerly owned and operated by Westlake Polymers LLC, or its predecessors in interest, at the Lake Charles Manufacturing Complex each constitute a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

61. Defendants own or operate, or Defendants or predecessors in interest owned or operated at the time of disposal, facilities at which hazardous substances were disposed and from which hazardous substances were disposed and released to the Site. There have been "releases" and "threatened releases," within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601 (22), of like hazardous substances to and at the Site.

62. The United States has incurred "response costs" within the meaning of Sections 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a), in connection with actions taken in response to the releases or threatened releases of hazardous substances to the Site. To date the United States has incurred unreimbursed response costs in excess of $13 million in connection with the Site.

63. The response costs incurred and to be incurred by the United States in connection with the Site are not inconsistent with the National Contingency Plan set forth in 40 C.F.R. Part 300.

64. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides that "[t]he amounts recoverable in an action under this Section shall include interest on the amounts recoverable under subparagraphs (A) through (D)."

65. Each Defendant is jointly and severally liable to the United States for response costs incurred in connection with the Site pursuant to Section 107(a)(1) or (a)(2) of CERCLA, 42 U.S.C. § 9607(a)(1) or (a)(2).

66. Each Defendant is also jointly and severally liable for any further response costs that the United States incurs in connection with the Site pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

a. In favor of Plaintiff against Defendants pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for reimbursement of costs incurred, and to be incurred, by the United States in responding

b. Granting declaratory relief in favor of the United States and against Defendants for any further response costs that the United States may incur in connection with the Site;

c. Awarding the United States and the State their costs of this action; and

d. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

_____
KENNETH G. LONG
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Phone: (202) 514-3145
Facsimile: (202) 616-6584
D.C. Bar No. 414791
kenneth.long@usdoj.gov

        ALEXANDER C. VAN HOOK
        Acting United States Attorney
        Western District of Louisiana


        s/ Jerry Edwards, Jr.
        JERRY EDWARDS, JR.
        Chief, Civil Division
        United States Attorney's Office
        Western District of Louisiana
        U.S. Department of Justice
        300 Fannin Street, Suite 3201
        Shreveport, Louisiana 71101
        (318) 676-3614
        Bar No. 30242
        jerry.edwards@usdoj.gov

OF COUNSEL:

EDWIN QUINONES
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 6
1201 Elm St., Suite 500
Dallas, TX 75270